UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSH MORLEY<br><br>Plaintiff,<br><br>v.<br><br>RITE AID HDQTRS CORP. d/b/a RITE AID CORPORATION; FIRST ADVANTAGE LNS SCREENING SOLUTIONS, INC. d/b/a FIRST ADVANTAGE BACKGROUND SERVICES CORP.<br><br>Defendants. | NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Mr. Morley brings this action against First Advantage LNS Screening Solution, Inc. d/b/a First Advantage Background Services Corp. ("First Advantage") for violation of his rights under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* for furnishing a misleading and inaccurate criminal background report furnished to a third party and against Rite Aid Hdqrts Corp. d/b/a/ Rite Aid Corporation ("Rite Aid") for violation of his rights under the Pennsylvania Criminal History Record Information Act ("CHRIA"), 18 Pa. Cons. Stat. Ann. § 9125.

## GENERAL ALLEGATIONS

1. Many employers require job applicants to complete a background check successfully prior to extending an offer of employment.

2. Companies that provide background check services collect information concerning members of the public, such as criminal histories, into reports and offer the reports for sale.

1

Including for sale to employers when the employers are conducting background checks on prospective and current employees.

3. Defendant First Advantage provides such services. Defendant First Advantage offers background reports for sale to employers, such as to Defendant Rite Aid, including background reports containing criminal histories.

4. Because an employer's hiring decision often depends upon the applicant being either completely free of criminal convictions, free of certain types of criminal conviction, or free of criminal convictions within a certain period of time, it is extremely important that the information contained in criminal history reports is accurate.

5. Unfortunately, for prospective employees whose prospective employers engage Defendant First Advantage's background reporting services, the reports (a "Criminal Conviction Report") are often misleading and inaccurate.

6. Defendant First Advantage's misleading and inaccurate Criminal Conviction Reports result in adverse employment decisions against qualified employees.

7. Defendant First Advantage provided a misleading and inaccurate Criminal Conviction Report to Defendant Rite Aid in that they produced a report which reported Mr. Morley's summary offense conviction under the "Felony and Misdemeanor" section of the report and inaccurately listed the case initiation date as January 22, 2014, when, in fact, the accurate case initiation date is December 28, 2013 pursuant to court records.

8. Thus the Defendant First Advantage presented Mr. Morley's criminal history information in its Criminal Conviction Report in a manner that misleads and is inaccurate, which consequently injured Mr. Morley.

9. As described in detail below, Defendant has injured Mr. Morley by providing his prospective employer with a misleading and inaccurate Criminal Conviction Report. The inaccurate Criminal Conviction Report resulted in, among other things, Mr. Morley's offer of employment being rescinded by Defendant Rite Aid.

10. Defendant Frist Advantage systematically violates the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"), by failing to follow reasonable procedures to assure maximum possible accuracy of their Criminal Conviction Report.

11. A report that is anything but blank can severely undermine an individual's employment possibilities for their entire life and can result in collateral consequences that expand an individual's punishment beyond that originally contemplated by the criminal justice system.

12. For that reason, Pennsylvania law, through the Pennsylvania Criminal History Record Information Act ("CHRIA"), forbids employers from considering arrests or charges that did not result in a conviction when making hiring decisions, and provides important substantive and procedural protections to job applicants to enforce that prohibition.

13. CHRIA applies to all Pennsylvania employers that decide whether or not to hire an employment applicant based in whole or in part on the basis of the applicant's criminal history record information.

14. CHRIA allows Pennsylvania employers to *only* consider felony and misdemeanor convictions in hiring decisions but such information "may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied." 18 Pa. C.S. § 9125(a)-(b).

15. CHRIA requires that when an employer denies a job application in whole or in part on the basis of criminal history record information, the employer must notify the applicant in

writing of such basis for its decision, so that an applicant can identify any inaccurate information.

16. In August 2016, Defendant Rite Aid refused to hire Mr. Morley based solely on criminal history record information that showed that he had been convicted of a summary offense in violation of CHRIA as described in detail below.

17. Defendant Rite Aid violated the Pennsylvania CHRIA, 18 Pa. C.S. §§ 9101 *et seq.* for Defendant's impermissible use of Mr. Morley's summary conviction to deny him employment to which he was qualified and for which he would have otherwise would have been hired.

18. As a result, Ms. Morley brings the instant claims, seeking injunctive relief, actual damages, exemplary and punitive damages, and costs and fees.

## PARTIES

19. Plaintiff Josh Morley ("Plaintiff" or "Mr. Morley") is a is a twenty-three-year-old African-American man who resides in Philadelphia, Philadelphia County, Pennsylvania and is a "consumer" as protected and governed by the FCRA. Mr. Morley is currently unemployed.

20. Defendant Rite Aid is a Pennsylvania corporation operating in the Philadelphia area with a principal place of business located at 30 Hunter Lane, Camp Hill, PA 17011. At all times relevant hereto, it was a "user" of the consumer report of Plaintiff, as governed by the FCRA.

21. Defendant First Advantage is a business entity that provides background screening services, decision-making intelligence, public record reports and operates as a "consumer reporting agency." Defendant First Advantage regularly conducts business in the Commonwealth of Pennsylvania, and operates a principal place of business at 1 Concourse Parkway NE, Suite 200, Atlanta, GA 30328 (Control Number 0456709).

## JURISDICTION AND VENUE

22.     This Court has original subject matter jurisdiction over Mr. Morley's FCRA claim pursuant to under 15 U.S.C. § 1681p, 28 U.S.C. § 1331 and supplemental jurisdiction over his CHRIA claim pursuant to 28 U.S.C. §1367.

23.     Mr. Morley's CHRIA claim is so closely related to the FCRA claim that it forms part of the same case or controversy under Article III of the United States Constitution.

24.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

25.     This Court has personal jurisdiction over the matter because the Defendants conduct substantial business activity in this District and because many of the unlawful acts described herein occurred in this District and give rise to the claims alleged, including but not limited to: Mr. Morley's claims arise directly out of Defendant First Advantage's conduct within the Commonwealth of Pennsylvania, including Defendant First Advantage's misleading and inaccurate criminal back report to Mr. Morley's potential employer Defendant Rite Aid.

## FACTUAL ALLEGATIONS

26.     Mr. Morley has been charged with a crime on one occasion. In 2013, Mr. Morley was charged with a summary offense for jumping a SEPTA turnstile because he did not have money to get home.

27.     On April 3, 2014, Mr. Morley was found guilty of the summery offense.

**Summary Offense under Pennsylvania Law**

28.     Pennsylvania statutory law maintains a classification system for criminal offenses whereby infractions are categorized as "felonies," "misdemeanors," and "summary offenses." 18 P.S. § 106.

29. Summary offenses are graded lower than felonies and misdemeanors. Summary offenses are either defined by statute or provide for a maximum prison sentence of not more than 90 days. 18 P.S. § 106(c).

30. Summary offenses in Pennsylvania include a variety of minor infractions such as attaching a nail or tack to a utility pole, littering, and returning library books more than 30 days late. *See* 18 Pa. C.S.A. §§ 6905, 6901, 6708).

31. Common summary offenses include disorderly conduct, loitering, and retail theft.

32. Often, summary offenses are issued for "quality of life" issues such as sitting on the steps of an abandoned house, riding a bike on the payment, or drinking a beer in public.

33. A criminal defendant facing a summary offense charge that does not potentially carry a jail sentence does not have a right to a lawyer.

34. Each year, there are tens of thousands of convictions for summary offenses in Pennsylvania. In 2013, more than 23,000 citations were issued for summary offenses in Philadelphia alone.

35. Summary offenses frequently are initiated by citation. Criminal defendants often simply resolve such citations by paying them without even going to court.

36. Sentences of imprisonment for summary offenses are rare. Often sentences are limited to fines and costs.

37. Pennsylvania law recognizes that summary offenses are significantly less serious than felonies and misdemeanors by treating them differently than felonies and misdemeanors in post-conviction matters.

38. For example, CHRIA permits employers to consider felonies and misdemeanor convictions to the extent that they relate to a job applicant's suitability for a job. 18 P.S. § 9125.

39.     However, CHRIA does not permit employers to consider summary offenses. *Cisco v. United Parcel Servs., Inc.*, 476 A.2d 1340, 1343 (Pa. Super. 1984).

40.     Further, felony and misdemeanor convictions almost never can be expunged in Pennsylvania.

41.     However, summary offense convictions can be expunged after the criminal defendant has been free of arrest or prosecution for five years following the conviction for that offense. 18 P.S. § 9122(b)(3)(i).

42.     Mr. Morley's summary offense is eligible to be expunged on or after April 2019.

**Mr. Morley's Application for Employment with Defendant Rite Aid**

43.     In or around mid-April 2015, Mr. Morley applied for an open position with Defendant Rite Aid. Mr. applied for the position by completing a Defendant Rite Aid employment application online.

44.     Mr. Morley applied for position 67 – UN CSHR/CLRK.

45.     Mr. Morley was qualified for the position.

46.     Shortly thereafter, Mr. Morley visited Defendant Rite Aid's Broad and Cheltenham (Rite Aid Store #02797) location to attend an interview regarding employment.

47.     After the aforesaid interview, Defendant Rite Aid made an offer of employment to Mr. Morley contingent upon his drug screen and background check results.

48.     In connection with Mr. Morley's application, Defendant Rite Aid purchased a background screening report from Defendant First Advantage. Hence, the report was obtained and used for an employment purpose.

49.     On or about May 20, 2015, using its usual practices and procedures, Defendant First Advantage compiled and furnished a consumer background report regarding Mr. Morley to Defendant Rite Aid.

50.     Following his interview, Mr. Morley did not hear back from Defendant Rite Aid. Therefore, after repeated phone calls to Defendant Rite Aid which did not produce any response as to a start date for his employment, Mr. Morley returned to the Defendant Rite Aid store location where he was interviewed.

51.     Upon returning to the aforesaid store location, Defendant Rite Aid verbally informed Mr. Morley that it was rescinding their offer and denying his application for employment.

52.     Defendant Rite Aid verbally informed Mr. Morley that he would receive further explanation of its decision by U.S. Mail.

53.     On or about May 29, 2015, Mr. Morley received a letter from Defendant Rite Aid stating that the background check report received from Defendant First Advantage may affect his application for employment with Defendant Rite Aid. Attached to the letter was a Criminal Conviction Report from Defendant First Advantage. Mr. Morley's Defendant First Advantage's Criminal Conviction Report is attached as Exhibit A.

54.     The Criminal Conviction Report that Defendant First Advantage furnished to Defendant Rite Aid included Mr. Morley's summary offense, but listed it under a category titled "Felony and Misdemeanor" and inaccurately listed the case initiation date as January 22, 2014, when, in fact, the accurate case initiation date is December 28, 2013 pursuant to court records.

55.     Mr. Morley has never been convicted of a felony or misdemeanor offense.

56.     Defendant Rite Aid denied Mr. Morley's application for employment based solely upon his summary conviction.

**The Pennsylvania Criminal History Record Information Act ("CHRIA")**

57. CHRIA applies to all Pennsylvania employers that decide whether or not to hire an employment applicant based in whole or in part on the basis of the applicant's criminal history record information.

58. CHRIA allows Pennsylvania employers to consider only felony and misdemeanor convictions in hiring decisions but such information "may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied." 18 Pa. C.S. § 9125(b).

59. CHRIA requires that when an employer denies a job application in whole or in part on the basis of criminal history record information, the employer must notify the applicant in writing of such basis for its decision, so that an applicant can identify any inaccurate information.

**The Fair Credit Reporting Act ("FCRA")**

60. Mr. Morley is a "consumer" as protected and governed by the FCRA.

61. Defendant First Advantage at all time relevant to this compliant operated as "consumer reporting agencies" as defined and governed by the FCRA.

62. Defendant First Advantage furnished a Criminal Conviction Report to Defendant Rite Aid on Mr. Morley.

63. The Criminal Conviction Report was obtained and used for an employment purpose.

64. Defendant First Advantage's Criminal Conviction Report with regard to Mr. Morley is misleading and inaccurate.

65. Defendant First Advantage's Criminal Conviction Report included Mr. Morley's summary offense, but listed it under a category titled "Felony and Misdemeanor" and

inaccurately listed the case initiation date as January 22, 2014, when, in fact, the accurate case initiation date is December 28, 2013 pursuant to court records.

66. Defendant First Advantage has a duty to "follow reasonable procedures to assure maximum possible accuracy of the information" in the Criminal Conviction Reports. *Id*. § 1681e(b).

67. Defendant First Advantage has lacked, and continues to lack, reasonable procedures to assure the maximum possible accuracy of the information concerning the information about whom the reports relate.

**Electronic Case Records for Summary Offenses in Pennsylvania**

68. The Administrative Office of Pennsylvania Courts ("AOPC") provides electronic information about Pennsylvania criminal cases, including summary offenses, to the public.

69. Information about an individual's criminal cases in Pennsylvania can be obtained by any member of the public by searching the Unified Judicial System of Pennsylvania's web portal. See https://ujsportal.pacourts.us/docketsheets.aspx.

70. Information can also be obtained through bulk distribution of electronic case records.

71. AOPC sells this information on a recurring basis.

72. Upon information and belief, Defendant First Advantage obtains electronic case record data generated by AOPC through a reseller.

73. One of the data elements that is provided by AOPC for each electronic case record, where available, is the grade of the offense. Thus, many electronic case records specifically report the classification of a summary offense.  If the grade of the offense is not available, it is left blank.

74. Moreover, the grade of a summary offense in the First Judicial District, which comprises the courts of Philadelphia, can often be identified based upon the assigned case number.

10

75.     All case numbers in the First Judicial District, and in all courts of the Commonwealth of Pennsylvania are formatted as XX-00-XX-0000000-0000, and contain two-letter codes which identify the court in which the case was tried and the nature of the case.

76.     The code for a case tried in the Court of Common Pleas is "CP" while the code for a case in the Municipal Court is "MC."

77.     The code for a case in Philadelphia Court of Common Pleas or Municipal Court is designated with the number "51."

78.     Felony and misdemeanor cases are identified in a separate portion of the case number as "CR."  In contrast, if a case relates solely to a summary offense, the same portion of the case number will bear the code "SU."

79.     Thus, a misdemeanor criminal case brought in the Philadelphia Municipal Court would bear a case number such as MC-51-CR-1234567-2014.

80.     In contrast, a case consisting solely of summary offense(s) brought in the Philadelphia Municipal Court would bear a case number such as MC-51-SU-1234567-2014.

81.     A finding of guilt on a summary offense in Philadelphia Municipal court can be appealed to the Court of Common Pleas.  Those cases also are assigned case numbers that are distinct from cases involving felonies and misdemeanors.  Those cases will bear the code "SA."

82.     Despite these clear and systematic indications of the grade of summary offenses in Pennsylvania, Defendant First Advantage frequently fails to distinguish between summary offenses and more serious criminal charges and instead reports summary offenses from Pennsylvania under "Felony & Misdemeanors."

**FIRST CAUSE OF ACTION**
**(Violation of the FCRA § 1681 et seq.)**
**(Violation of 15 U.S.C. 1681e(b))**
**(Plaintiff v. Defendant First Advantage)**

83. Plaintiff reiterates each of the allegations in the preceding paragraphs as if fully set forth at herein.

84. In the "Congressional findings and statement of purpose" of the FCRA, Congress stated that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3), (4).

85. Mr. Morley is a "consumer" under the FCRA because Plaintiff is an individual. 15 U.S.C. § 1681a(c) ("The term 'consumer' means an individual.).

86. The FCRA applies to Defendant First Advantage because it is a "person" and a "consumer reporting agency" under the statute and its Criminal Conviction Reports are "consumer reports" under the statute. *Id.* § 1681a(b), (d)(1), (f).

87. Indeed, Defendant First Advantage has admitted the FCRA applies to the Criminal Conviction Reports it issued to Plaintiffs because each such report includes, inter alia, a copy of Plaintiff's rights under the FCRA.

88. Under the FCRA, a "person" is an "individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." *Id.* § 1681a(b).

89. Defendant First Advantage is a corporation and, consequently, it is a "person" under the FCRA. *Id.*; *see* Parties, supra.

90. Under the FCRA, a "consumer reporting agency" is a "person which, for monetary fees . . . regularly engages . . . in part in the practice of assembling or evaluating . . . information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

91. Defendant First Advantage is a "consumer reporting agency" under the FCRA because, for monetary fees, it assembles or evaluates information on consumers for the purpose of furnishing Criminal Conviction Reports to third parties (i.e., the consumers' current or prospective employers), and because Defendant uses means or facilities of interstate commerce for the purpose of preparing or furnishing the Criminal Conviction Reports. *Id.*

92. Defendant First Advantage's Criminal Conviction Reports are "consumer reports" under the FCRA because each Criminal Conviction Report is a "written . . . communication of . . . information by a consumer reporting agency bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . .employment purposes[.]" Id. § 1681a(d)(1)(B).

93. As part of its service agreement with its customers, Defendant First Advantage requires that its subscribers contact Defendant First Advantage to invoke special procedures for preparation and use of a Criminal Conviction Report in the case of suspected misconduct or violation of state, federal, or local law.

94. Mr. Morley's Criminal Conviction Report was not procured using these special procedures.

95. Mr. Morley's report was not procured in connection with any investigation of suspected misconduct relating to employment or to compliance with federal, State, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer. Section 1681e(b) of the FCRA provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

96. Under FCRA Section 1681e(b), Defendant First Advantage has a duty to "follow reasonable procedures to assure maximum possible accuracy of the information" in the Criminal Conviction Reports. *Id*. § 1681e(b).

97. Consumer reports are inaccurate for purposes of Section 1681e(b) not only when they are facially false, but also when they are technically accurate yet nonetheless misleading.

98. As set forth above, when preparing the Criminal Conviction Report, which are consumer reports, Defendant First Advantage has lacked, and continues to lack, reasonable procedures to assure the maximum possible accuracy of the information concerning the information about whom the reports relate. Defendant First Advantage fails to follow such reasonable procedures because it knowingly, recklessly, or negligently reports summary convictions under the "Felony and Misdemeanor" section of the Criminal Conviction Report and inaccurately reported the wrong case initiation date.

99. Defendant First Advantage's liability to Mr. Morley arose from the same unlawful policies, practices, or procedures.

100. Defendant First Advantage's violations of Section 1681e(b) were willful in that (i) it knew, or reasonably should have known, that it was failing to comply with the FCRA and/or (ii) it was acting in reckless disregard of its responsibilities under the FCRA.

101. In the alternative, Defendant First Advantage's violations of Section 1681e(b) were negligent in that it had an affirmative statutory duty to employ reasonable procedures to ensure maximum possible accuracy of the information in the consumer reports in question, but failed to comply with that statutory duty.

102. If Defendant First Advantage willfully violated Section 1681e(b), Plaintiff is entitled to any actual damages they sustained or damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorney's fees as determined by the court, as specified in Section 1681n(a)(1)(A), (2), and (3).

103. In the alternative, if Defendant First Advantage negligently violated Section 1681e(b), Plaintiff is entitled to any actual damages he sustained, along with the costs of the action together with reasonable attorney's fees as determined by the court, as specified in Section 1681o(a)(1), (2).

**SECOND CAUSE OF ACTION**
**(Violation of the Criminal History Record Information Act, 18 Pa. C.S. § 9125(a-b))**
**(Plaintiff v. Defendant Rite Aid)**

104. Plaintiff reiterates each of the allegations in the preceding paragraphs as if fully set forth herein.

105. Mr. Morley applied for employment with Defendant Rite Aid.

106. Mr. Morley was qualified for the position.

15

107. Defendant Rite Aid willfully decided not to hire Mr. Morley based on information that was part of his criminal history record information file.

108. CHRIA allows employers to consider felony and misdemeanor convictions in hiring decisions but such information "may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied." 18 Pa. C.S. § 9125(a).

109. Mr. Morley's sole conviction for a summary offense did not relate to his suitability for employment in the position at Defendant Rite Aid for which he applied.

110. Furthermore, Mr. Morley has never been convicted of a misdemeanor or felony offense.

111. The summary offense by Mr. Morley was not a misdemeanor or felony conviction and cannot, in whole or in part, legally form the basis for an employer's decision not to hire him.

112. The actions of Defendant Rite Aid injured Mr. Morley Ms. Adams, including by causing significant damages in lost wages and benefits and harm to his reputation.

113. Accordingly, Defendant Rite Aid willfully violated 18 Pa. C.S. § 9125(a)-(b).

114. Mr. Morley is entitled to injunctive relief, any actual and real damages not less than $100 for each of these violations, exemplary and punitive damages not less than $1,000 and not more than $10,000 for each of these violations, reasonable costs of litigation and attorneys' fees, as specified in 18 Pa. C.S. § 9183.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all issues so triable in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

A.	That judgment be entered against Defendant First Advantage for statutory damages in the amount of not less than $100 and not more than $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a);

B.	That judgment be entered against Defendant First Advantage for actual damages, pursuant to 15 U.S.C. §§ 1681n and 1681o;

C.	That judgment be entered against Defendant First Advantage for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

D.	Award costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 1681o;

E.	Award injunctive relief, pursuant to 18 Pa. C.S. § 9183(a), compelling Defendant Rite Aid to discontinue their practices of violating 18 Pa. C.S. § 9125 in their hiring processes and providing a system to monitor compliance;

F.	Award Plaintiff actual and real damages not less than $100 for each of these violations, pursuant to 18 Pa. C.S. § 9183(b)(2);

G.	Award Plaintiff exemplary and punitive damages not less than $1,000 and not more than $10,000 for each of these violations, pursuant to 18 Pa. C.S. § 9183(b)(2);

H.	Award Plaintiff his reasonable costs of litigation and attorneys' fees, pursuant to 18 Pa. C.S. § 9183(b)(2); and

I.	That the Court grant such other and further relief as may be just and proper.


Dated: October 31, 2016                                         s/ Robert Cocco_____

                                                                                        ROBERT P. COCCO, P.C.
                                                                                        By:  Robert P. Cocco, Esquire
                                                                                        Attorney ID No. 61907
                                                                                        1500 Walnut Street, Suite 900
                                                                                        Philadelphia, PA 19102
                                                                                        rcocco@rcn.com

WILLIG, WILLIAMS & DAVIDSON
Ryan Allen Hancock
Attorney ID No. 92590
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Telephone: 215.656.3679
rhancock@wwdlaw.com

*Attorneys for Plaintiff*